# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| EDDIE POLK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0788-WS-N |
| | ) |
| HOUSE-HASSON HARDWARE | ) |
| COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on its sua sponte review of its subject matter jurisdiction.[1] The defendants have submitted a brief and evidentiary materials in support of removal, (Docs. 9, 10), the plaintiffs have responded, (Doc. 11), and the issue is ripe for resolution.[2] After carefully considering the foregoing and other relevant material in the file, the Court concludes that this action is due to be remanded for want of subject matter jurisdiction.

## BACKGROUND

The defendants removed this action on December 4, 2009, based on diversity of citizenship. (Doc. 1). Diversity of citizenship is apparent and uncontested; at issue is whether the $75,000 amount in controversy requirement is met.

---

[1] Federal courts are of limited jurisdiction, and this Court has an independent and continuing obligation to confirm its subject matter jurisdiction, even when the parties do not question its existence. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 409, 411 (11th Cir. 1999); *accord Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

[2] The plaintiffs couch their response in the alternative as a motion to remand, and they include therein a motion for an award of costs and fees. (Doc. 11 at 1-2, 12-13).

The complaint alleges that the three plaintiffs were employed by the defendants' assignor, bankrupt non-party Moore-Handley, Inc. ("Moore-Handley"), as sales associates in the hardware distribution and sales business; that they executed non-piracy agreements with Moore-Handley; that these agreements preclude the plaintiffs, upon leaving Moore-Handley's employment, from soliciting any customer or prospective customer for which the plaintiff had account responsibility, or with which the plaintiff had dealt, in the twelve months preceding separation; that the agreement identifies for each plaintiff certain specified counties as to which the non-piracy agreement extends (the "covered territories"); that the non-piracy provision applies to the first twelve months after the employee leaves Moore-Handley's employment; that the plaintiffs left employment in 2009;[3] that the plaintiffs have taken employment with Orgill, Inc. as sales representatives but have not competed with the defendants in the covered territories, instead being assigned new sales territories with which they have little or no familiarity; that they are engaged in rebuilding their books of business and establishing new customer and potential customer contacts in their new areas; and that their inability to ply their profession the covered territories has substantially impeded their ability to earn a living. (Doc. 1, Exhibit A at 4-8).

The complaint does not seek an award of damages. Instead, it requests a declaration that the defendants, as the purchaser of Moore-Handley's assets through bankruptcy, are not legally entitled to enforce the non-piracy agreements. (Doc. 1, Exhibit A at 9-10).

## DISCUSSION

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Insurance Co.*, 410 F.3d

---

[3] Plaintiff Reid left Moore-Handley on July 23, plaintiff Winslett on July 31, and plaintiff Polk on September 25. (Doc. 1, Exhibit A at 4-5).

1350, 1353 (11th Cir. 2005). "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (internal quotes omitted). "In other words, the value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (en banc). The defendant recognizes these principles. (Doc. 9 at 8, 10-11).

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The defendants acknowledge that *Williams* applies. (Doc. 9 at 9). The defendants also concede it is not facially apparent from the complaint that the jurisdictional amount is satisfied.

Instead, the defendants argue that the jurisdictional amount is established by documents in its possession that chart the earnings history of the plaintiffs with Moore-Handley. The argument goes as follows: (1) the complaint seeks to have the non-piracy agreements declared unenforceable; (2) such a ruling would allow the plaintiffs to compete with the defendants in the covered territories; (3) the value to each plaintiff of such a ruling (and thus the amount in controversy) is "what Plaintiffs will earn in the sales territories to which they are now seeking access"; (4) the plaintiffs were paid by Moore-Handley "predominantly" by commission; (5) in 2007 and again in 2008, each plaintiff was paid well more than $75,000 by Moore-Handley; (6) in 2009, before leaving Moore-Handley's employ, two plaintiffs were paid more than $75,000 and the third was on track

to do so; and (7) the plaintiffs therefore would earn over $75,000 in the covered territories were they to prevail in this action. (Doc. 9 at 11-18).

There are multiple problems with this argument. As a threshold matter, to establish the amount in controversy the defendants rely on documents from Moore-Handley, not from the plaintiffs. This is important because, "[w]hen a plaintiff seeks unliquidated damages and does not make a specific demand, ... the factual information establishing the jurisdictional amount must come from the plaintiff." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1214 n.66 (11th Cir. 2007). While there are exceptions to this rule — as when a suit for breach of contract implicates a substantive legal rule for calculating such damages, which can then be applied to the contract and a damages figure ascertained, *id.* — the defendants offer no exception that could apply here, and the Court will not conjure one on their behalf.[4]

Nor do the defendants' documents satisfactorily demonstrate the amount in controversy, for a host of reasons. First, while it is clear the plaintiffs want the non-piracy agreements declared unenforceable, it is completely unclear to what extent the plaintiffs will actually seek business in the covered territories should they prevail in this lawsuit. The complaint asserts that the plaintiffs "have been assigned to new sales territories," (Doc. 1, Exhibit A at 6), and there is no evidence that could allow the Court to assume that their work in their assigned territories is anything less than full-time.[5] Nor is there evidence that Orgill would allow the plaintiffs to shed their assigned territories in

---

[4]When the Court questioned the existence of subject matter jurisdiction, it provided the defendants time to submit "any supplemental brief or other material supporting their removal of this action." (Doc. 7 at 2). The Court did not thereby excuse the defendants from complying with *Lowery* but merely extended them an opportunity to supplement their notice of removal with additional evidence, as contemplated by *Williams*; per *Lowery*, however, that evidence generally must have come to the defendant from the plaintiff.

[5]On the contrary, the defendants insist the plaintiffs "are actively soliciting business for their new employer." (Doc. 9 at 3).

favor of the covered territories should they prevail.

Second, it is equally unclear how much business the plaintiffs would obtain in the covered territories were they to seek business therein. The complaint makes clear the plaintiffs have customers and contacts in the covered territories, but their relation with the plaintiffs was through Moore-Handley, not Orgill. There is no evidence that any, much less all, of the plaintiffs' former customers would abandon Moore-Handley in favor of Orgill simply because the plaintiffs request them to do so. Nor is there evidence that Orgill's products and service are, or are widely perceived as, comparable or superior to Moore-Handley's. Nor is there evidence of the pricing structure of Orgill and Moore-Handley, which would certainly factor into any decision on which supplier to utilize. Finally, the only evidence as to the trend of the employers' business is that it is declining (unsurprising in a recession), with the plaintiffs' sales with Moore-Handley falling in 2008 and again in 2009.[6] There is thus no basis for assuming, as do the defendants, that the plaintiffs would book as much business in the covered territories with Orgill as they did with Moore-Handley.

Third, it is equally unclear how much compensation the plaintiffs would receive from any business they wrote in the covered territories, because the defendants have offered no evidence of Orgill's compensation structure. For all the record shows, the plaintiffs may make a substantially lower percentage commission with Orgill than they did with Moore-Handley, or might even receive no commission at all but only a salary, the amount of which is unknown.

As the defendants recognize, (Doc. 9 at 9, 13), the jurisdictional amount must be "readily deducible" from the documents before the Court, rather than merely "speculative." *Lowery*, 483 F.3d at 1211, 1213 n.63, 1214-15. In *Ericsson GE Mobile*

---

[6]The defendants assert in brief that the 2009 sales figures are for six months, but they are actually for the entire period of the plaintiffs' 2009 employment. (Doc. 10, Exhibit D to Exhibit 5). The 2009 sales figures therefore were not on track to best 2008, as the defendants suggest, but were poised to fall well below 2008 figures.

*Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216 (11th Cir. 1997), the plaintiff sought an injunction to prevent the awarding of a government contract to the defendant, which exerted improper influence on the city's decisionmakers in the course of being awarded the contract pursuant to competitive bidding. The Court held that the value to the plaintiff of such an injunction was "too speculative and immeasurable to satisfy the amount in controversy requirement," because the city would be free to not rebid the contract or to again award the contract to someone other than the plaintiff. *Id*. at 221-22. *Ericsson* stands for the proposition that "we refus[e] to pile possibility onto possibility to estimate the value of th[e] benefit" to a prevailing plaintiff. *Cohen*, 204 F.3d at 1078. The defendants' argument invites the Court to do precisely what *Ericsson*, *Cohen* and *Lowery* prohibit.

Even were the Court to indulge the plaintiffs' argument, it would not meet the jurisdictional threshold as to any plaintiff.[7] The defendants lump salary in with commissions in quantifying the plaintiffs' compensation, but booking additional business in the covered territories would not increase their salaries with Orgill, only their commissions. Polk's commissions for his 2009 employment were $53,570.07. (Doc. 10, Exhibit E to Exhibit 1). That rate of commissions, "annualized" as the defendants want it, (Doc. 9 at 19), comes out somewhere south of $73,000.

The same calculation as to Reid yields an annualized figure exceeding $100,000. The problem is that the defendants are not entitled to use annualized figures. The non-piracy agreements, by their express terms, apply only "during the twelve month period

---

[7]"We do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit," but only when the plaintiffs "'unite to enforce a single claim or right, in which they have a common and undivided interest.'" *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir. 2002) (quoting *Zahn v. International Paper Co.*, 414 U.S. 291, 294 (1973)); *accord Lowery*, 483 F.3d at 1198. The defendants do not appear to argue that they than cumulate the claims of the three plaintiffs in order to reach the jurisdictional threshold, and any such position would be foreclosed by these authorities.

beginning with your separation from employment." (Doc. 1 at 3).[8] Reid separated from Moore-Handley on July 23, 2009, (Doc. 1, Exhibit A at 4), so his non-piracy agreement expires on or about July 23, 2010. "[T]he district court must determine whether it had subject matter jurisdiction at the time of removal."[9] Removal was accomplished on December 4, 2009, so over four months of the twelve-month period had already elapsed, and at most only the remaining eight months of commissions could be at issue. Were Reid to earn commissions at his 2009 rate for eight months following removal, they would total less than $70,000.

Applying the same methodology to plaintiff Winslett yields an eight-month commissions figure of almost $85,000. However, it was never possible that Winslett would receive a favorable ruling on the enforceability of the non-piracy agreement by November 30, 2009, four months after he left Moore-Handley's employment. The complaint was not even filed until November 3, and it did not seek either mediation or an expedited judicial ruling. (Doc. 1, Exhibit A). The dispute could not be resolved before the defendants appeared or defaulted, and they did not file a responsive pleading until December 4, (Doc. 2), along with their notice of removal. Their answer reserved to them the right to conduct discovery before any judicial ruling, (*id*. at 9), so at the time of removal the defendants' own position rendered it impossible to resolve the controversy quickly. Moreover, the defendants' unsupported removal required the Court to confirm

---

[8]The defendants' unexplained assertion that, in calculating the amount in controversy, past income can be "multiplied by the indefinite number of future years each Plaintiff seeks relief to work in the contested territories," (Doc. 9 at 18-19), is contradicted both by the express language of the agreements and by the defendant's own concession that a "twelve-month sales year [is] the time period the Non-Piracy Agreements prevent Plaintiffs from selling in the sales territories to which they are seeking access." (*Id*. at 19).

[9]*Poore v. American-Amicable Life Insurance Co.*, 218 F.3d 1287, 1291 n.2 (11th Cir. 2000), *overruled in part on other grounds, Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).

its subject matter jurisdiction before addressing the merits,[10] and the briefing on this threshold issue required until December 22, immediately prior to the Christmas and New Years' holidays. (Docs. 7, 11). How long it would take to resolve the merits remains open to debate, but never was it possible to do so less than one month after removal. Accordingly, at the time of removal no more than seven months of commissions could have been in controversy, and that amount falls below $75,000 by the defendants' own figures.

The defendants seek to pad these numbers with attorney's fees. (Doc. 9 at 19-20). However, the agreements allow only the defendants, not the plaintiffs, to be awarded attorney's fees. (*Id*.). Moreover, such fees are allowed only if the plaintiffs breach the agreements, (*id*.), and the plaintiffs do not in this lawsuit seek to breach them but to have them declared unenforceable. Finally, even were attorney's fees in the picture, the defendants offer nothing, not even speculation, about the amount.

Finally, the defendants throw out a number of makeweight arguments, none of which requires significant discussion. First, they suggest that common sense dictates that the amount in controversy be deemed satisfied. (Doc. 9 at 13). While there is a place for common sense in evaluating the amount in controversy,[11] it would require the abdication of common sense to find that the defendants' arguments and evidence rise above the speculative level condemned repeatedly by the Eleventh Circuit as legally inadequate.

Second, the defendants complain how great the detriment to them would be were the plaintiffs to prevail. (Doc. 9 at 16). As controlling law provides and the defendants themselves recognize, (*id*. at 10), the amount in controversy in a declaratory judgment action must be based on the value of the litigation from the plaintiff's perspective, not the defendant's. *E.g., McKinnon Motors, LLC*, 329 F.3d at 807; *Cohen*, 204 F.3d at 1077;

---

[10]*See* note 1, *supra*.

[11]*Nelson v. Whirlpool Corp.*, 2009 WL 3792267 at *3 (S.D. Ala. 2009).

*Ericsson*, 120 F.3d at 218-20.

Third, the defendants object — repeatedly — that the plaintiffs brought this lawsuit for the improper purpose of re-litigating in state court an issue they have already lost in bankruptcy court: the assignability of the non-piracy agreements. (Doc. 9 at 1-2, 3-4, 7-8, 20-21). That proposition is not nearly so clear as the defendants suggest,[12] but it is in any event legally irrelevant to whether the amount in controversy exceeds $75,000 so as to vest this Court with subject matter jurisdiction.

For the reasons set forth above, the plaintiffs' motion to remand is **granted**. This case is **remanded** to the Circuit Court of Marengo County. The plaintiffs' motion for fees and expenses is **denied**.

DONE and ORDERED this 11th day of January, 2010.

s/ WILLIAM H. STEELE<br>UNITED STATES DISTRICT JUDGE

---

[12]The complaint seeks a declaration that the non-piracy agreements are *not enforceable by* the defendants, not that the agreements are *not assignable to* the defendants. (Doc. 1, Exhibit A at 8). The defendants admit that the bankruptcy court, while ruling that the agreements are assignable, explicitly declined to rule on the viability of any defenses to enforceability the plaintiffs may have. (Doc. 9 at 8 & n.6; Doc. 11 at 3).